Please the court David Edwards for plaintiff appellants. Plaintiffs come before the court today requesting that they be entitled to seek relief from a poorly drafted voter initiative that has honestly left them in an impossible situation. Plaintiffs can't comply with the law because it's practically or legally impossible to do so and plaintiffs won't break the law because they're law-abiding citizens that understand the importance of firearm safety legislation. So the question before the court today is whether the plaintiffs have articulated an injury that satisfies this court's article 3 jurisdiction. Here the allegations in the complaint demonstrate that plaintiffs are currently being injured by their inability to undertake specifically articulated transfers of their firearms that they currently own. Some of the plaintiffs run fire ranges, some of them share a firearm in their home, others are non-residents who would like to travel in Washington with their firearm for personal safety. The the plaintiff's inability to be able to undertake these transfers impacts their lives, their travel, their businesses, and their personal safety and stems not only from the fact that they fear prosecution should they run afoul of the statute but from the fact that they are unable to comply with the statute even if they wanted to. These injuries are concrete, they're particularized, they're actual, and they're imminent. Now the Supreme Court... What's imminent about them? About them, well, so the the not only is there an imminent threat of prosecution should they... That's where? I mean that's what I'm missing. Where's the evidence of an imminent threat of prosecution? Well the evidence of the imminent threat of prosecution if you look at cases like Vallee del Sol, you look at Babbitt, you look at Virginia via American booksellers, all of these cases say if you were to engage in the conduct that you have articulated that you want to engage in, that you are within the zone of the statute, that the statute clearly applies to your conduct, and we're not going to require you to commit a felony to be able to challenge the the constitutionality of that law, especially where the law is chilling the prosecution, there's also the actual and imminent threat of the fact that... Counsel, has there been, has there, has any law enforcement officer gone to say, for example, you have a firing, I guess, Firearms Academy of Seattle, which operates a shooting range. Has any law enforcement officer said you can't operate the shooting range because it violates this law? Well, what with the Firearms Academy of Seattle is somewhat of a special case here. The court, as the court's aware, the Washington State Legislature amended the statute during the summer and honestly removed a lot of the vagueness concerns that the plaintiffs have. The one vagueness issue that is left is the Firearms Academy of Seattle, which operates a firearms range in Lewis County. The Firearms Academy of Seattle contacted the Lewis County prosecutor, this is in the complaint, and asked, am I an authorized fire range? Lewis County does not authorize fire ranges. It also doesn't prohibit fire ranges. I'm not sure if I'm running afoul of I-594. And Lewis County prosecutor's response was, your guess is as good as mine. There has been no... But they didn't say we're going to prosecute you for it. Well, they did not say that they're going to prosecute them for it, but at the same time, the Lewis County prosecutor admitted that they do not know if they're violating I-594, which is the vagueness. But that's different than there being an imminent threat of enforcement. And is, in fact, the Firearms Academy still running its business or has it gone out of business? Well, it's still running its business. The issue at Firearms Academy, most individuals... The Firearms Academy of Seattle is not a traditional shooting range, which you can rent firearms from Firearms Academy. They are a bring-your-own-firearm-and-we-train-you-how-to-use-those-firearms, B-U-I-O-G. Exactly, B-U-I-O-G. There are two handguns that that Firearms Academy of Seattle owns that they had previously loaned out to individuals that did not have hand to train on handguns that they did not own. Since the passage of I-594, they have halted that loan program. And so the I-594 essentially caused Firearms Academy of Seattle to halt the transfers that they had historically undertaken for fear of the fact that they don't know whether they're actually subject to I-594 or not. So that particular aspect of it is the vagueness challenge for Firearms Academy of Seattle. After the amendments that have happened in the Washington State Legislature, we're left with the conclusion that the rest of the plaintiffs, putting aside Northwest Firearms Safety, putting aside the private security companies and the private investigators, who we believe are now not subject to I-594. The remaining individuals are put to the task of deciding, do we want to commit a Class C felony and advertise it and hope that somebody prosecutes us to be able to challenge this law? Or do we refrain from that activity and seek a declaratory judgment on that particular conduct so that we can, without having to break the law, exercise our constitutional rights? I appreciate your argument that there's a Ninth Circuit case law, the Thomas line of cases. Then you have the Supreme Court's decision in MedImmune. I agree, it's difficult to reconcile those two cases at times. But one concern I have about your position, so help me out here, is in the Thomas case, the dissent in Thomas cited STFL. And STFL seems to me to be, basically MedImmune is STFL applied in a certain context. If we had a clean slate, like we were Thomas, we were the Thomas court, that's one thing. But since the Thomas court, at least the dissent, thought about the STFL case in the Thomas case, and if STFL and MedImmune are basically the same, how do we get to where you want to go saying MedImmune effectively changed Thomas if MedImmune and STFL are the same thing, and STFL was before the court in Thomas? Hopefully I described that correctly. How do we get there? I understand, Your Honor. And perhaps our language is a little loose in terms of whether MedImmune changed the Thomas standard, as much as recognized a hole in the Thomas standard. Honestly, Thomas itself, the three opinions in Thomas, are a little bit of a microcosm of the argument we're having here today. You have the majority that announces this fairly strict, on-its-face test, factor test, even though the Supreme Court has said in, you know, Babbitt United Farms that standing is not susceptible to any precise test, Thomas adopted a three-factor test, and then applied it, honestly, to a relatively easy case, given the test that they applied. You know, I'm sure the court is aware of the facts of that case, but effectively decided that the injury, the injury that would occur, would only occur after an unknown set of speculative steps that required third-party conduct that may or may not happen by unknown third parties. That was the ultimate holding of Thomas. The concurrence in the dissent both interpret what the majority did as effectively wiping away all prior Ninth Circuit precedent on this, and the dissent specifically said that it was directly contrary to Supreme Court precedent. The majority, in response to that, in the first footnote says, no, no, no, you're reading us all wrong. This does not overrule prior Ninth Circuit precedent, having to do with constitutional rights. And then later, this court in CPL counsel, V. Getman, said Thomas should not be interpreted that narrowly, should not, or excuse me, broadly. What the concurrence and the dissent are saying is not true. There are still circumstances in which the Thomas factors may not be met, but there is standing under prior constitutional cases in Ninth Circuit, as well as in the Supreme Court. And in particular, you look at cases like Vallée del Sol v. Whiting, where this court effectively applied the, you know, it relied on Babbitt, which is a First Amendment case, and it relied on that to effectively find standing in a case where two of the Thomas factors were clearly absent. The state in Vallée del Sol said, not only is this individual not subject to prosecution, we're not going to prosecute them. And in that case, it's an imminent threat of prosecution in that case. And there's not an imminent threat of prosecution in this case. Vallée del Sol was not a First Amendment case. It was a due process Fagnus challenge. And you look at that in combination with cases like Abbott v. Gardner in the Supreme Court in 67, which applied this understanding to an APA challenge. You look at Jackson v. City and County of San Francisco, which is the court affirmed on appeal, although not discussing the standing inquiry, in the description of what injury was being adjudicated in that case, specifically says, these are individuals that wish to violate the statute. They are not subject to prosecution. They're not being threatened with prosecution. And yet, this court found no problem whatsoever with that case going forward in the Article 3 jurisdiction. And so, honestly, what we're left with are the cases that have found standing and the cases that haven't found standing. And I put forward to the court that if the court looks at the facts of the cases that have found standing, the ones I just mentioned, that they have found standing in circumstances where the Thomas factors have not been met. Because there are constitutional rights at issue, there is a self-chilling of constitutional rights. And if these individuals were to violate the law in the concrete way that they have put forward, that they would be subject to prosecution. There are plenty of examples in the case law where individuals, both in Valley del Sol and in other cases like Wolfson v. Brammer, where this court has said, we're not going to require people to break the law just so they can challenge the constitutionality of a statute. And particularly in Wolfson v. Brammer, this court said, especially with a new statute that hasn't been applied very frequently, that is going to be held very low on our list of how we're applying the Thomas factors. And if you compare those cases to the cases put forward by the state, cases like Stoyanoff v. State of Montana, cases like Scott v. Pasadena Unified School District in San Diego, even San Diego County, these are cases in which individuals could not be prosecuted if there was not a long string of unconnected events requiring third parties that may or may not ever occur. Scott v. Pasadena especially, there may be school lotteries, we don't know. There may be race and gender waiting to that, we don't know. Somebody may be affected by that race and gender waiting, we don't know. We can't have you come in front of the court and posit a possible injury if we don't even know if that injury is ever going to happen. In Stoyanoff v. State of Montana, you have an individual who was challenging a head shop act essentially, where you couldn't advertise drug paraphernalia. And that I don't even want to advertise. I don't fear prosecution under the statute. I just don't like the statute. And that is specifically the type of generalized grievance that the Ninth Circuit has said is not appropriate. And we completely agree. That's not the problem that we have in this court. These are individuals who have historically undertaken these transfers, non-commercial transfers of their own firearms, and temporary non-commercial transfers as well. And what the statute says is you can no longer engage in those transfers. You can no longer, for instance, if you are an out-of-state resident, you can no longer travel to Washington and check your firearm with Delta or any other airline because you will have to, to be able to get it back, you have to be involved in a background check. And since you're an out-of-state resident, a licensed FFL dealer cannot give you a handgun. They are not entitled to. And so if you bring your firearm, your handgun to Washington to travel with you for personal safety, you will not get it back in Washington. You have to, they will have to send it back to California for you and you can receive it there. Counsel, given the two enforcements that we're aware of, which both were in connection with the commission of another crime, isn't it very remote that a person who lawfully checks their gun in a suitcase in Florida and then gets it back in Washington would be prosecuted under this statute? Well, I think the issue, honestly, the issue with the enforcement of the statute is that unless a larger crime occurs, I agree with you, the likelihood it's going to become known to prosecutors is going to be low. The one prosecution that we're aware of, the Martinez prosecution, we're not, honestly don't have facts on the other one that the state has said has occurred. That individual actually went to police to turn himself in for the fact that he had engaged in a commercial transfer, a sale of the firearm, and that was why he was subject to prosecution. However, the problem in this case really is these non-commercial transfers are illegal. They are subject to I-594 and these individuals don't know when that prosecution is going to occur, but under Babbitt, under Virginia v. American Booksellers, those individuals are still subject to or are still permitted to challenge that and not risk the fact that they may be subject to prosecution. If there are no questions at this moment, I'd like to reserve. Thank you. And may it please the court, my name is Jeffrey Even. I'm a deputy solicitor general for the state of Washington here on behalf of the FLE Robert Ferguson. The plaintiffs lack standing to bring this action because they failed to satisfy this court's well-established test for standing to challenge a statute that's not been enforced against them. This court's en banc decision in Thomas requires plaintiffs to show a genuine threat of an imminent prosecution. Plaintiffs present purely abstract and hypothetical claims and this court should affirm dismissal for lack of standing. Now the basic standard under Thomas is that the the plaintiff has the burden to show a genuine threat of imminent prosecution. So that's our key inquiry, our key phrase where the statute has not been imposed against or enforced against them. Right, so the initial question I have for you is does any of this conduct that is remaining that hasn't been rendered moot by the amendments to the statute that they allege, and I have it listed here, does any of it fall within the ambit of the Well your honor, because this case was dismissed at the standing stage, the state has not taken a position on that point, but we are left with some pretty unlikely outlier contenders. That's a question that is raised if you look at the wider question of whether there's an imminent threat, you have to ask first does this conduct even come within the statute? Because if it doesn't come within the statute, then there's no threat. And your honor, we have refrained from taking a position on each of these various scenarios that are alleged, they're mostly alleged rather vaguely, because of the difficulty in construing the statute in a factual vacuum. Now I think if the court were to conclude that deciding whether hypothetically these incidents would violate the statute is material to this court's decision on standing, then the step that should follow would be a certification of that question to the Washington Supreme Court, because the statute has never been interpreted in state court, and so the question of its interpretation should be certified to the Washington This is unnecessary because whether or not these are violations of the statute, the plaintiffs have not provided evidence of a genuine threat of imminent prosecution. The Thomas Court gives us three factors to consider, but that is ultimately a totality of the circumstances analysis, and in this case I is that, as plaintiffs admit, nobody has, from the state or local prosecutors, have given them any kind of warning that the behavior they're talking about here would result in prosecution or would be likely to result in prosecution. Let me give you, and I will acknowledge this is an extreme example, but I just want you to help me understand this case. So if the state of Washington, or use my case, the state of California passes a law saying you can't play basketball on Sundays, and if you do the penalty is your hands will be cut off, and they say that that's the law. My daughters play basketball on Sundays. That would be a big impact on my family if that couldn't happen. It would change, every Sunday would be different from here on out. Now no one has actually told us, hey you better not do it, we're gonna cut off your hands, but that would change our behavior dramatically. Do I have to send them on the court and just see what happens for them to challenge this law? Well, there are a number of cases that make the point that it isn't necessary to actually commit a crime and risk prosecution and be prosecuted in order to have standing to challenge, but sure, and cases like Steinhoff v. Montana that say the mere existence of the statute does not itself provide standing. There must still be some concrete and particularized threat of prosecution. It may be the, well, another case making that point I think is the U.S. Supreme Court decision. Counsel, excuse me one second, but Judge Owens' question illustrates exactly why I'm asking about whether or not any of this conduct comes within the ambit of the statute, because in his hypothetical, it is clear that his daughters playing basketball on Sunday would violate that statute, so it comes within the ambit of what's prohibited by that statute. Here we have a situation where it's not clear. Yes, and the same is true in Valley Soul, for example. There was no question about coming within the scope of the statute in that case, but what the courts indicate is that that existence of the statute by itself is not enough because we still need to consider whether there is an imminent, a genuine threat of an imminent prosecution as opposed to something that's merely hypothetical. So the difference then in between my daughter's case and this case, you would say, is that in my daughter's case the law is clear that they would be violating it, so therefore they would have an ability to challenge it. That's one way that the court could construe or distinguish from this case, Valley Del Sol, for example, where the court talks about how concrete the plan was. There was no ambiguity about whether the plaintiff in that case was going to engage in the conduct, and there was no question in that case about whether the conduct fell within the scope of the statute. The court then doesn't go on and say anything about whether any prosecution had been threatened, doesn't discuss the other factors under Thomas, and I don't know whether that is because the court found it inherent in the facts of the case or if there's some other explanation, but the court doesn't give us any guidance on that point. What Thomas does, however, is make clear that it isn't enough, you know, the factors that are listed under Thomas are not a menu. It's not a list of three factors, and if you satisfy any one of them, you have standing. They're tools to guide the court in considering the totality of the circumstances. So where here there is absolutely nothing, and the plaintiffs don't contest that. They admit they have absolutely nothing by way of any concrete threat from anybody or any history that behavior similar to the behavior that they talk about in their complaint would result in a prosecution, where we're totally devoid of any indication of that, and where in addition the plaintiffs say they're not going to engage in the conduct, rather they have changed their behavior, that leaves us with simply a failure of the Thomas test. In fact, I'd point out that in one of the cases covered by the 2017 amendments, there's an allegation in the complaint that members of the Second Amendment Foundation simply intend to engage in non-commercial transfers. No more facts than that. There's nothing there to give a court any kind of a factual context in which to apply the statute, and so construction of the statute does better await circumstances in which we could develop those facts and determine whether in a specific context the statute does or does not apply to that behavior. If I could ask you about the new statute that was passed. What is your position on what should happen here? Because I know we asked for some letter briefs, and thank you for those from both sides. It's a little confusing who's still in the case and who's not. Is it the State's position that if the plaintiffs want to file a lawsuit, or would they amend their complaint? Because the District Court never heard any argument obviously on the 2017 law. Obviously, it hadn't been enacted yet. What should we do? Well, in this case, I think the question is simply whether the plaintiffs have standing. Now the court, as I think both sides have indicated, the shooting range, the security firm, you know, those scenarios, scenarios in which both parties to the transfer and the firearm all remain together during the time that the transfer has taken place, the law simply doesn't address that anymore. Now we didn't frame that in terms of being moot simply because that might imply that there was ever an actual dispute, justiciable dispute, before the court in the first place, but the result's very much the same. So I think with that understanding, the District Court, if the case, if the court otherwise found standing, could sort out which claims need to be either dismissed or perhaps voluntarily dismissed. I guess what I'm wondering is just prudentially, does it make sense for this court to chime in on a Second Amendment standing issue in a case where the statute at issue isn't at issue anymore? Would it make more sense to send this whole case back to District Court and say, look, District Court, you got a new statute before you, you got all these parties saying I'm in the case, I'm not in the case, maybe I'm in the case, there may be facts that need to be elicited for all those new parties, and just send the whole thing back and, I mean, you know, not from the District Court, but just say this has to be a do-over because the legislature moved the goals. What's wrong with that? Well, I think given the Thomas test for standing, the court does have enough before it at this point to be able to conclude that there is no standing as to any of the plaintiffs because none of them have offered a vague and abstract case. Now, that would not be with prejudice to the ability to bring a case if new facts arose, and perhaps somebody could allege a genuine threat of imminent prosecution, but that's not this case and there really isn't anything in the 2017 statute that would cause the court to have to go back and make a different legal analysis as to the plaintiffs other than the ones we've discussed. And the legislature amending the law in 2017, can we view that as, look, the legislature clearly wants these cases prosecuted, that's why they keep amending the law, or does it actually have to be from the executive branch? I think it needs to be from the executive because what all the legislature did was amend a few discrete provisions of the act. It isn't really as if they had started over and re-enacted the entire initiative. What they've done is just these rather precise individual pieces. So we can't draw any inference from those amendments about what the legislature thinks the rest of the statute meant or the application of the statute to other parties. I have a question for you. Ken, is there any procedure whereby the remaining people, who seem to still be in the case, could go to the Attorney General and get an advisory opinion on whether or not their conduct is prohibited by the statute? Yes, but I'm not sure that it gets us where we want to go. In Washington... It might get me where I want to go. Anyway, go on. In Washington, there are a number of public officials who can make requests to the Attorney General's office for formal opinions. And so a legislator could, a county prosecutor could, for example. There are some others. And if they do that, we can issue an advisory opinion that gives the official position of our office. However, there are a couple of points to understand about the product of that. And maybe I'll just say my day job is I coordinate that program. So I think I know something about it. One is, we would have essentially the same justiciability problem here that a court does in construing what the statute means in the absence of factual development. Because all we could do is offer a legal analysis. A prosecutor could look at scenarios that have facts that we don't anticipate. Perhaps that the plaintiffs don't anticipate at this point. That's why there's something of a vacuum around this statute at this point. Second point is, while an opinion from our office states the Attorney General's official position, the vast majority of criminal prosecutions in Washington are prosecuted by county prosecutors. And they, particularly, again, if they had some other set of facts that maybe hadn't been, hadn't been anticipated, aren't strictly bound by that. And so we could still wind up with somebody being prosecuted, even though there's an Attorney General's opinion that gives our analysis of the statute. So it's not like the U.S. Department of Justice where the Attorney General can shut down a prosecution. That's right. Our county prosecutors are separately elected. They're separately accountable to their local voters. And unless the court has further questions, unless Judge Wardlaw, anything further? I just have one, one to that point. So, for example, the Second Amendment Foundation allegations that you raise, if it, it seems to me like where you're going is that if it simply gave firearms to people in its membership and nothing further occurred, unlikely to be prosecuted. But if it gave a firearm to a member of its organization who then went out and killed 50 people, there's, there could be a prosecution. But you need, you would need more facts like that. Well, and it could be facts like that. Certainly facts like that raise the issue in the first place, bring it to the attention of law enforcement. So I suppose in that sense, it increases the likelihood of prosecution. But I'd be concerned about other issues, like is there any reason why the transferor knew that, I mean, this is all an exercise in prosecutorial discretion. So if the transferor had no idea that the person intended to do this, you know, maybe that enters into the exercise of discretion. I don't know. But that is a problem that's inherent, I think, in a statute that has never yet been interpreted and has not been, we don't have a history of prosecution other than these two incidences in which there were rather different facts than the ones we have today. All right, thank you. Thank you. Thank you very much, counsel. Thank you. Please don't tell me my kids' hands are going to get cut off. Well, no, I think not. And I think I'd like to co-opt your example and sort of fill it in with a little bit of facts from what we're discussing today. If the state of California passed this law and said your kids' hands are going to get cut off if you go play basketball and then says, look, we can't really tell you whether playing basketball is what the statute's worried about or whether the state of Washington is doing. And honestly, the discussion the court just had with the state is the issue that the plaintiffs have, is that, honestly, before the amendments this summer, there was a vagueness claim and there was a second amendment claim. Our position is that the amendments from the Washington state legislature have effectively removed a lot of the vagueness issues. That one of the amendments that they made, the amendment that says that temporary transfers are not subject to I-594 any longer if the transferor and the firearm stay within the presence of the transferee. If that is true, if that's exempted from I-594, then that means that if the transferor leaves, then that is not exempted from I-594 unless another specific exemption exists. And that makes the scope of I-594 very clear, that if in any transfer, that is a temporary transfer, a loan, a gift, just a, hey, can I look at your firearm? If you leave the room, you are violating I-594. And the state's position that they that we're three years in now and the state has never once in this, in this case, taken a position in the court or honestly at large of what violates I-594 and what they will be prosecuting, the Department of Licensing for the state of Washington has said that they will not give any sort of indication of how to comply with I-594. And now that the state has amended the statute in a way that the, that the conduct that is, I will submit, concretely articulated within the complaint. The one, the one sentence that the state points out is in the Second Amendment's, Second Amendment Foundation's portion of the complaint that says that its members are engaging in these sorts of transfers that the other plaintiffs are engaging in. That is more for the organizational standing question than it individual members are in the case. You have Gene Hoffman, you have Joe Wardlaw, or excuse me, Jordan Wardrow, who, who is, who are members of the Second Amendment Foundation, who are non-residents of Washington State, who would like to travel in Washington and their transfers are illegal by I-594. They should not be put to the task to commit a Class C felony and go to jail for a year just to be able to challenge the idea that the, their constitutional rights are, are, are being impacted. And just real quickly before I'm done, in case the, the, the court is concerned at all about the First Amendment cases at issue here and whether those apply, I would just point the case, the, the court to Valley del Sol that relied on Babbitt and First Amendment case law. I'd even point to Arizona Right to Life v. Bayless, which relies on Fourth Circuit, Fourth Circuit precedent mobile oil that was a preemption case that relied on American, excuse me, Virginia versus American booksellers. These are cases that have found the same principles apply to constitutional rights in general and not just to the First Amendment cases and have found standing in cases like this. Thank you. Thank you very much, counsel, to both of you for outstanding argument in this case. This case is submitted and we are in recess.
judges: Wardlaw, Clifton, Owens